## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| CIJI STRINGER, ET AL | CIVIL DOCKET NO. 6:23-cv-00415 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| ROBIN INSTRUMENT & SPECIALTY, LLC, ET AL | MAGISTRATE JUDGE DAVID J. AYO |

## MEMORANDUM RULING

Before the Court are three motions: two MOTIONS FOR SUMMARY JUDGMENT filed, respectively, by Defendants Ametek, Inc. ("Ametek"), [Doc. 71], and Robin Instrument & Specialty, LLC ("Robin"), [Doc. 72], and a MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT GLENN H. GLEASON, [Docs. 70, 73], urged by both defendants (the "*Daubert* Motion"). Plaintiffs, the spouse and children of decedent Timothy Stringer, oppose these Motions. [Docs. 81–83]. Ametek filed a Reply brief in support of their *Daubert* Motion [Doc. 88] and a Reply brief related to their Motion for Summary Judgment [Doc. 91]. Plaintiffs filed Sur-Replies to the *Daubert* Motion and Ametek's Motion for Summary Judgment [Docs. 94, 97]. Having considered the briefing and evidentiary submissions, the Court rules as follows.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of the death of Timothy L. Stringer ("Stringer") resulting from a May 15, 2021, explosion on an offshore oil and gas production platform owned by Fieldwood Energy LLC ("Fieldwood"). [Doc. 1-1, p. 3, ¶ 8]. At the time of the accident, Stringer was working on the platform and, along with another employee, was performing a pressure integrity test on a well. [Doc. 82-1, p. 6]. To

perform this test, Stringer was provided with a Crystal XP2i Digital Test Gauge ("Crystal Gauge") to monitor the internal pressure on the pipe casing. [*Id.*, p. 32]. Ametek is the manufacturer of the Crystal Gauge, and Robin distributed it to Stringer's employer. [Doc. 1-1, p. 3, ¶ 9].

While performing the pressure integrity test, Stringer verbally reported the pressure readings he saw on the Crystal Gauge to his co-worker standing nearby. [Doc. 82-1, p. 6]. Shortly after Stringer called out the number, "175" to his co-worker, the casing ruptured – causing the explosion that resulted in Stringer's death. [*Id.*, p. 33]. Fieldwood's successor, QuarterNorth Energy, investigated the cause of the explosion and concluded, among other findings, that Stringer was calling out pressure readings from the Crystal Gauge in "Bar" rather than "PSI," causing him and his co-worker to grossly underestimate the amount of pressure present in the pipe casing.[1] [*Id.*, p. 32]. Specifically, Stringer's last callout of 175 in "Bar" correlated to approximately 2,538 PSI, which exceeded the casing's maximum internal pressure rating. [*Id.*].

Stringer's spouse and children filed suit in the 15th Judicial District Court of Lafayette Parish, Louisiana, on February 28, 2023. [Doc. 1-1]. In their Petition, Plaintiffs allege that Ametek and Robin failed to warn users like Stringer of the foreseeable misuse that the Crystal Gauge could be set to read in either PSI or Bar

---

[1]      "PSI" is an abbreviation for "pounds per square inch," a unit of pressure measurement primarily used in the imperial system. MERRIAM-WEBSTER DICTIONARY (12th ed. 2026). Similarly, "Bar" is a unit of pressure measurement primarily used in the metric system. *Id.* One Bar unit is equivalent to 14.5038 PSI. [Doc. 82-1, p. 19]. Ametek does not dispute that PSI is the industry standard in the domestic offshore oil and gas industry. *See generally* [Docs. 71-1, 91].

and of the dangers associated with misinterpreting or mixing up the units of pressure. [*Id.*, pp. 5–6, ¶ 15]. Robin removed the case to this Court on March 31, 2023. [Doc. 1].

Ametek and Robin filed the instant Motions on January 5, 2026. Ametek contends that Plaintiffs' expert is unqualified, his opinions are speculative and unreliable, and that without his testimony there is no genuine dispute of material fact that would preclude summary judgment. [Doc. 71-1].

Robin joins in this argument and further urges that, as merely the distributor of the Crystal Gauge, it is not a manufacturer for purposes of the Louisiana Products Liability Act ("LPLA"), nor did it have the requisite actual or constructive knowledge of the Crystal Gauge's alleged defect to be held liable as a non-manufacturing seller. [Doc. 72-1]. The Motions are now ripe for ruling.

## APPLICABLE STANDARDS OF REVIEW

A court should grant a motion for summary judgment when the movant can show that "there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). But there is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

Federal Rule of Evidence 702 governs the admissibility of expert testimony at trial. Under this rule, expert testimony is admissible if the expert is qualified based on his knowledge, skill, experience, training, or education, and the proponent demonstrates that it is more likely than not that:

(i)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(ii)  the testimony is based on sufficient facts or data;

(iii) the testimony is the product of reliable principles and methods; and

(iv)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Generally, if there is some "reasonable indication of qualification[]," then the expert's opinion may be admitted, and the expert's "qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999). A court's gate-keeping function serves to exclude testimony that is based on subjective belief or unsupported speculation. *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 590 (1993). Put differently, "[t]he object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022).

However, while the gatekeeping function of a trial court is important, it does not supplant the adversary system. *La. Minerals, Ltd. v. Weyerhaeuser Co.*, 2025 WL 1783719, at *2 (W.D. La. June 18, 2025)*, citing Daubert*, 509 U.S. at 596. If the

evidence is "shaky but admissible[,]" then "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking …" the expert's opinion. *Daubert*, 509 U.S. at 596.

<u>LAW AND ANALYSIS</u>

## I.    Motion to Exclude the Testimony of Dr. Gleason

Ametek, joined by Robin, argue that Plaintiffs' expert, Glenn Gleason ("Gleason"), is unqualified and that his report and testimony are speculative and unreliable.[2] [Docs. 70, 73]. Plaintiffs respond that Gleason's opinions are reliable because they are based on testimony of fact witnesses, documents produced in discovery, the Crystal Gauge itself and its product manual, and investigation reports and photographs. [Doc. 83]. Plaintiffs further argue that Gleason is qualified because he is a licensed Professional Engineer and possesses a Ph.D. in Mechanical Engineering. [*Id.*].

Upon review of the record, the Court notes that Gleason is a licensed Professional Engineer with a Ph.D., Master of Science, and Bachelor of Science in Mechanical Engineering. [Doc. 83-14]. During his academic career, Gleason claims

---

[2]        In its Reply, Ametek also argues the "heeding presumption," that a plaintiff would be presumed to heed additional warnings and modify his behavior, can be rebutted in this case. [Doc. 91, pp. 9–10]; *Bloxom v. Bloxom*, 512 So. 2d 839, 850 (La. 1987). Ametek argues that because Stringer did not read the Crystal Gauge's Operating Manual to learn that alternate measurement units were a feature of the Crystal Gauge, he would not have read an additional warning cautioning against the potentially fatal dangers of misinterpreting pressure units. [Doc. 91, pp. 9–10].

However, "new argument[s] cannot be raised for the first time in a reply brief." *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 850 F. App'x 213, 217 (5th Cir. 2021). Accordingly, this issue is not considered.

that he became proficient with different types of physical mechanisms and instruments commonly used to measure pressure. [Doc. 83-13, p. 2, ¶ 4]. Gleason also served as a consultant at an engineering firm where he conducted "mechanical system and equipment failure analysis" and tested mechanical relief valves, pressure vessels, and the use of pneumatic and hydraulic equipment requiring the monitoring of pressure gauges. [*Id.*, p. 3, ¶¶ 5–6]; [Doc. 83-14]. Thus, this Court finds that Gleason is qualified to serve as an expert in this matter due to his educational and professional experience. Any doubts as to Gleason's qualifications are suitable for cross-examination, but these doubts do not warrant exclusion.

The Court next turns to Gleason's methodology in reaching his proffered opinion. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.*

In his report, Gleason opined that Ametek could and should have: (i) presented clear warnings accompanying pressure units so consumers can disable unused unit systems on the gauges; and (ii) limited available unit systems through factory default settings on gauges that would be used in industries that only use PSI. [Doc. 83-12, p. 9]. Gleason bases his opinion on investigations of the incident from other engineering firms, the market in which the Crystal Gauge was sold (where PSI was the sole unit of measure), deposition testimony stating that Ametek disabled all other units besides Bar in the Chinese market, the Crystal Gauge's operation

manual, and a physical inspection of the Crystal Gauge itself.  [*Id.*, pp. 2–3].  All told, these factual bases are sufficient for this Court to find that Gleason's report is not so speculative as to warrant exclusion.

Doubts about an expert's qualifications or the factual basis for their testimony generally concerns the weight of the evidence, not its admissibility.  *Primrose Operation Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).  And importantly, "rejection of expert testimony is the exception rather than the rule."  *La. Minerals*, 2025 WL 1783719, at *2 (internal citations omitted).  Therefore, doubts regarding Gleason's qualifications or the factual basis for his opinions are best left to a jury, not this Court.  The *Daubert* Motion [Docs. 70, 73] is therefore DENIED.

## II.    Ametek's Motion for Summary Judgment

Accidents that occur on fixed platforms located on the outer continental shelf are governed by the Outer Continental Shelf Lands Act ("OCSLA").  43 U.S.C. § 1331 *et seq.*  Under the OCSLA, the law of the adjoining state is applicable to the extent that it is not inconsistent with any federal law.  *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969).  Because the platform on which the accident occurred was located off the Louisiana coast, Louisiana law applies.[3]  [Doc. 1-1, p. 3, ¶ 9].  Thus, the LPLA and Louisiana negligence law govern Plaintiffs' claims against Ametek and Robin.

The parties agree that Ametek manufactured the Crystal Gauge.  [*Id.*].  Accordingly, the LPLA dictates Ametek's liability, as the LPLA establishes the "exclusive theories of liability for manufacturers for damages caused by their

---

[3]    The parties do not dispute that Louisiana law applies to this case.

products." La. R.S. § 9:2800.53. "A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." *Id.*

Here, Plaintiffs claim that Ametek failed to warn Stringer of characteristics of the Crystal Gauge that rendered it unreasonably dangerous. [Doc. 1-1, pp. 5–6, ¶ 15]. To prevail on an LPLA failure to warn claim, a plaintiff must establish four elements: (i) the plaintiff's injury arose from a reasonably anticipated use of the product by the plaintiff or someone else; (ii) the defendant manufactured the product at issue; (iii) the plaintiff's injury was proximately caused by a characteristic of the product; and (iv) this characteristic made the product unreasonably dangerous. S*tewart v. Cap. Safety USA*, 867 F.3d 517, 520 (La. 2017*), citing Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002).

Plaintiffs allege that Ametek breached its duty to warn by failing to clearly alert users to the dangers of misinterpreting the pressure unit functions on the Crystal Gauge – especially given offshore operators' exclusive use of the PSI measurement. [Doc. 83, p. 25]. Thus, according to Plaintiffs, because Ametek knew the Crystal Gauge could display measurements aside from PSI, such as Bar, Ametek had a duty to provide clear warnings about the dangers of misinterpreting pressure units to the Crystal Gauge's users. [*Id.*].

Including Gleason's anticipated testimony, Plaintiffs have put forth sufficient evidence to defeat summary judgment. Gleason's expert report and the summary judgment evidence create a genuine dispute of material fact as to whether Ametek's alleged failure to warn the Crystal Gauge's end users of the dangers of

misinterpreting pressure units rendered the Crystal Gauge unreasonably dangerous. Accordingly, Ametek is not entitled to summary judgment.

## III.    Robin's Motion for Summary Judgment

In its Motion, Robin contends that it is not a manufacturer for LPLA purposes and that Plaintiffs cannot demonstrate that Robin had actual or constructive knowledge of the Crystal Gauge's alleged defect under a non-LPLA theory of negligence. [Doc. 72-1]. In its Opposition, Plaintiffs fail to address Robin's argument that it is not a manufacturer for LPLA purposes. [Doc. 82, pp. 16–17]. But as to non-LPLA negligence, Plaintiffs contend that Robin had actual or constructive knowledge of the dangers of misinterpreting the Crystal Gauge's pressure units and failed to warn Stringer of this risk. [*Id.*, pp. 21–26].

### A.    LPLA Liability

The LPLA elements discussed above for Ametek also apply to Plaintiffs' claim against Robin. *See* [*Id.*, p. 21] ("This is a failure to warn case."). But Robin did not manufacture the Crystal Gauge; instead, it sold the Crystal Gauge to Stringer's employer. [Doc. 1-1, p. 3, ¶ 9]. Ordinarily, a non-manufacturer cannot be liable under the LPLA. However, a non-manufacturer may be subject to LPLA liability if "[a] seller of a product … exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." La. R.S. § 9:2800.53(1)(b); *see also* John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 572 (1989) ("A seller may nonetheless become a manufacturer by satisfying the manufacturer test if he 'exercises control over or influences a

characteristic of the design, construction or quality of the product' and this characteristic causes damage.").[4]

Here, Plaintiffs allege that "Robin … made modifications to the Crystal Gauge before the Crystal Gauge caused" Stringer's injuries. [Doc. 1-1, p. 3, ¶ 9]. However, Plaintiffs have failed to put forth evidence demonstrating that Robin recalibrated or modified the Crystal Gauge. To the contrary, Robin's corporate representative testified in his deposition that Robin certified, but did not recalibrate, the Crystal Gauge to ensure it operated correctly. [Doc. 72-4, pp. 7–8]. And in its Opposition, Plaintiffs fail to argue that Robin is a manufacturer for LPLA purposes, effectively conceding this point. [Doc. 82, pp. 16–17]. Plaintiffs have therefore failed to present evidence of an essential element of their LPLA claim against Robin and summary judgment on this claim is warranted.

### B.    Non-Manufacturer Seller Liability

Robin next contends that as a non-manufacturer seller, it had neither the duty to inspect the product for any inherent defects nor warn of any obvious defects. [Doc. 72-1]. Plaintiffs respond that Robin had actual knowledge of the Crystal Gauge's alleged defects because it is a specialized distributor of the Crystal Gauge, as shown by its distribution agreement with Ametek. [Doc. 82-2]. Thus, according to Plaintiffs, because Robin knew that: (i) the Crystal Gauge would be sold to Stringer's employer in an industry where only PSI is used, and (ii) the Crystal Gauge could be configured

---

[4]    Senator John N. Kennedy was a drafter of the LPLA.

to disable unwanted units of measurement, Robin possessed actual knowledge of the Crystal Gauge's alleged defect.  [Doc. 82, pp. 22–23].

In Louisiana, a non-manufacturer seller may be liable for tort damages if three requirements are met.  *Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714 (La. 2013).  First, the product sold must be defective.  *Id.*  Second, the seller must have had actual or constructive knowledge that the product it sold was defective.  *Id.* Finally, the seller must have failed to declare the defect.  *Id.*  But unlike a manufacturer, a seller is not presumed to have knowledge of defects, and a seller is not required to inspect a product to determine the possibility of non-apparent defects.[5]  *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993).

Upon careful consideration, the Court finds that Plaintiffs have put forth just enough evidence to create a genuine dispute of material fact as to whether Robin had actual or constructive knowledge about the Crystal Gauge's alleged defects and whether it warned Stringer about this defect.  Critical to its analysis is the fact that Robin held itself out as a specialized distributor of the Crystal Gauge for the oil and gas industry in its Distributorship Agreement with Ametek.  [Doc. 82-2, p. 3].  Robin

---

[5]    Under Louisiana law, a seller has "no duty to warn against dangers which are obvious or of which the buyer should be aware."  *State Farm v. Norcold, Inc.*, 2008 WL 4853030, at *2 (W.D. La. Oct. 17, 2008), *citing Hopper v. Crown*, 555 So. 2d 46 (La. App. 1st Cir. 1989). Here, the Crystal Gauge contained a "units" button located prominently on its face. [Doc. 71-5, *see manual attachment*].  However, whether the "units" button made the dangers of misinterpreting the pressure units obvious to a user is a question of fact.  There is also a label just above the "units" button that states "5000 PSI."  [*Id.*].  Thus, a reasonable person may believe that the Crystal Gauge only measures units in PSI.  But because this Court cannot weigh the evidence and must interpret all evidence in favor of the non-movant on summary judgment, a genuine dispute of material fact exists regarding whether the danger of misinterpreting pressure units was obvious.

also represented that it was knowledgeable about the markets in which the Crystal Gauge would be sold. [*Id.*]. Therefore, a reasonable jury could find that Robin knew, or should have known, that the Crystal Gauge would be used solely for PSI measurements and that its capability to display other units of measurement was a defect that should have been declared.

Additionally, the Crystal Gauge's operations manual is available only on a disk or online. [Doc. 82-4, p. 19]. This limitation creates a genuine dispute as to whether the manner in which the manual was provided constitutes an adequate warning. And Gleason opines in his expert report that the Distributorship Agreement required Robin to be knowledgeable about the markets in which the Crystal Gauge was sold. [Doc. 82-12, pp. 14–15]. Based on that required knowledge, Gleason opined that Robin should have advised Stringer's employer about the option to disable units not typically used in the Louisiana offshore industry, but negligently failed to do so. [*Id.*].

At bottom, Plaintiffs have put forth sufficient evidence to create a genuine dispute of material fact as to whether Robin knew or should have known of the Crystal Gauge's alleged defect arising from unintended activation of pressure readings in unit systems that users may be unfamiliar with. Accordingly, Robin is not entitled to summary judgment as to Plaintiffs' non-manufacturer seller negligence claim.

## CONCLUSION

For the foregoing reasons, Ametek's MOTION FOR SUMMARY JUDGMENT [Doc. 71] and the *Daubert* Motion [Docs. 70, 73] are DENIED, and Robin's MOTION FOR SUMMARY JUDGMENT [Doc. 72] is GRANTED IN PART and DENIED IN PART.

Accordingly,

IT IS HEREBY ORDERED that Ametek's MOTION FOR SUMMARY JUDGMENT [Doc. 71] is DENIED.

IT IS FURTHER ORDERED that Ametek's and Robin's MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT GLENN H. GLEASON [Docs. 70, 73] is DENIED.

IT IS FURTHER ORDERED that summary judgment is GRANTED as to Plaintiffs' claims against Robin under the LPLA and DENIED as to potential non-manufacturer seller liability.  [Doc. 72].

THUS, DONE AND SIGNED in Chambers on this 20th day of February 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE